UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
          :
RAYMOND PRINCE,                                  :
                       Plaintiff,    :
                                      :        11 Civ. 5317 (JPO)
              -against-               :
                                      :       MEMORANDUM AND
PHILIP D. HEATH & T. BOWERS,      :             ORDER
                      Defendants.  :
                                      :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Raymond Prince, the plaintiff *pro se*, filed his initial complaint in this action on July 25, 2011. (Dkt. No. 2.) An amended complaint followed on September 29, 2011. (Dkt. No. 8 ("Compl.").) In it, Plaintiff alleges that he made a certain request of Philip D. Heath and T. Bowers ("Defendants") and that they failed to respond as Plaintiff argues they were required to do by the Interstate Agreement on Detainers ("IAD"). (*Id.* at 2.)[1] On January 5, 2012, Defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. (Dkt. No. 12.) For the reasons discussed below, Defendants' motion will be granted.

**I.     Subject Matter Jurisdiction**

      This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 because "the [Interstate] Detainer Agreement is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law." *Cuyler v. Adams*, 449 U.S. 433, 442 (1981).

---

[1] Citations to the amended complaint refer to pages as numbered 1 to 7 at docket entry number 8.

**II.     Background**[2]

Plaintiff alleges that, while he was incarcerated at Sing Sing Correctional Facility ("Sing Sing"), he "became aware of a warrant remaining lodged against him from the State of South Carolina." (Compl. at 4.) Plaintiff attached to his opposition to the instant motion a warrant signed by New York Governor David Paterson. (Warrant of David A. Paterson, Governor ("Paterson Warrant"), appended to Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkt. No. 20 ("Pl.'s Opp."), at 13.)

The Paterson Warrant states that it had "been represented to me, DAVID A. PATERSON, Governor of the State of New York, by the Governor of the State of South Carolina that RAYMOND PRINCE . . . is a fugitive from justice and stands charged in that State with the crime of Murder . . . ." (*Id.*) The Paterson Warrant goes on to state that South Carolina's Governor had demanded that Paterson cause Plaintiff to be delivered to agents of the Sheriff's Department of Charleston County, South Carolina and that the South Carolina Governor's "demand [was] accompanied by an Affidavit sworn before a Magistrate and a Warrant issued thereon." (*Id.*) The Paterson Warrant instructs the New York City Police Commissioner and "any other police officer in the State of New York" to "arrest and secure [Raymond Prince]" and "deliver [him] into the custody of the said agent(s)." (*Id.*)

Plaintiff also attached to his opposition a document labeled Inmate Overview, which lists various information about Plaintiff and identifies him as a "fugitive from the State or [*sic*] So-ugh [*sic*] Carolina." (Inmate Overview, appended to Pl.'s Opp. at 11.) The Paterson Warrant

---

[2] Unless otherwise stated, the facts in this background section are drawn from Plaintiff's amended complaint and the documents incorporated by it or integral to it. *See Harris v. New York State Dep't of Health*, 202 F. Supp. 2d 143, 147 (S.D.N.Y. 2002) (explaining that "a court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading").

2

and Plaintiff's Inmate Overview are deemed integral to Plaintiff's amended complaint and are thus considered by the Court in analyzing the instant motion.

Plaintiff alleges that he "initiated a request for final disposition in relation to this warrant in accordance with Article III(B) of New York Criminal Procedure Law § 580.20. Said request, dated December 1, 2010, was [a] written request made by plaintiff to Defendant Heath." (Compl. at 4.) Plaintiff further alleges that Heath failed to act on Plaintiff's request "and instead forwarded plaintiff's request to Defendant Bowers, who, by memorandum dated December 15, 2010, declined to notify the prosecuting office in South Carolina of plaintiff's request for final disposition of the lodged warrant." (*Id.*)

Plaintiff alleges that Defendants' actions were in violation of the IAD and, as a result, violated his rights to a speedy trial under the U.S. Constitution's Sixth Amendment and to due process, equal protection, and access to the courts under the Fourteenth Amendment. (*Id.*) Plaintiff seeks money damages for these alleged violations. (*Id.* at 5.)

### III. Legal Standard

On a motion to dismiss a complaint pursuant to Rule 12(b)(6), the Court accepts the complaint's factual allegations as true and draws inferences only in the plaintiff's favor. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). Nevertheless, to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"*Pro se* status does not . . . excuse a plaintiff from compliance with the pleading standards of the Federal Rules of Civil Procedure." *Jenkins v. New York City Dep't of Educ.*,

3

2011 U.S. Dist. LEXIS 130815, at *7-8 (S.D.N.Y. Nov. 9, 2011). At the same time, *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and the court must read the plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191 (2d Cir. 2008); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).

### IV. Discussion

The IAD is an interstate compact, which "establishes procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial." *Seymore v. State of Ala.*, 846 F.2d 1355, 1357 (11th Cir. 1988). It "was enacted to require the prompt resolution of outstanding charges against a sentenced prisoner to minimize interruptions in his ongoing prison term while he responds to pending charges in another jurisdiction." *United States v. Figueroa*, No. 04 Cr. 6106 (JWF), 2005 U.S. Dist. LEXIS 5741, at *12 (W.D.N.Y. Feb. 10, 2005) (citing *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001)). New York and South Carolina are both parties to the IAD. *See* N.Y. Crim. Proc. Law § 580.20; S.C. Code Ann. § 17-11-10.[3]

Operation of the IAD is triggered by the filing of a detainer by one state with another state. *See* IAD Art. III(a) ("Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint *on the basis of which a detainer has been lodged against the prisoner*, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the

---

[3] Hereinafter, citations to the IAD refer to the article and section numbers within the agreement, not to a particular state's codification. However, where minor differences in punctuation and wording exist, this opinion uses the agreement's language as adopted by New York.

4

prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . .") (emphasis added)).

The IAD does not provide a definition of "detainer," but the Supreme Court has defined the term as "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking . . . either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Reed v. Farley*, 512 U.S. 339, 342 (1994) (internal quotation marks and citation omitted).  However, the IAD's use of the term detainer does not encompass every request or demand from one party state to another concerning a prisoner.  For example, the Supreme Court held in *United States v. Mauro* that a writ of *habeas corpus ad prosequendum* issued by a federal district court, ordering delivery of a prisoner from state prison, "is not a detainer within the meaning of the [IAD] and thus does not trigger the application of the Agreement."  *U.S. v. Mauro*, 436 U.S. 340, 349, 98 S. Ct. 1834 (1978).

The Court reasoned that such a writ "requir[es] the immediate presence of the prisoner," whereas "a detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison.  Further action must be taken by the receiving State in order to obtain the prisoner." *Id.* at 358.  Since the purpose of the IAD is "'to encourage the *expeditious* and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints,'" the Court held that, "[w]hen the United States obtains state prisoners by means of a writ of habeas corpus *ad prosequendum*, the problems that the Agreement seeks to eliminate do not arise . . . ." *Id.* at 360-61 (quoting IAD Art. I) (emphasis and alteration in *Mauro* opinion).

5

Following the Supreme Court's decision in *Mauro*, other courts have held that, like a writ of *habeas corpus ad prosequendum*, a governor's warrant is not a detainer. The Eighth Circuit explained that

> [u]nlike detainers, and like the federal writ of habeas corpus Ad [*sic*] prosequendum, an extradition warrant is a demand for Immediate [*sic*] custody of a prisoner to stand trial on outstanding charges. This demand for immediate custody tends to insure the expeditious disposition of outstanding charges and simply does not create the kinds of problems which the Agreement was enacted to solve. Accordingly, we conclude that the Agreement does not prevent the use of traditional extradition procedures, at least where no detainer has been lodged in connection therewith.

*State ex rel. Bailey v. Shepard*, 584 F.2d 858, 862 (8th Cir. 1978). That court further noted that

> [t]he duty of states to extradite persons to other states is rooted in Article IV, section 2 of the Constitution and thus it can be assumed that the drafters of the [IAD] were aware of the use of extradition procedures and that when they used the word "detainers," they meant something quite different.

*Id.* at 862 (citing *Mauro*, 98 S. Ct. at 1847). *See also State v. Roberson*, 78 Wash. App. 600, 602, 897 P.2d 443, 444 (1995) ("[A] governor's extradition warrant is not a detainer under the Interstate Agreement on Detainers . . . ."); *People v. Quackenbush*, 687 P.2d 448, 450 (Colo. 1984) (Governors' "warrants do not constitute 'detainers.'") (citation omitted).

The Court agrees with the Eighth Circuit and the other courts that have followed it that a governor's warrant does not constitute a detainer for purposes of the IAD. Here, Plaintiff has alleged that a governor's warrant but not a detainer—as the term is used in the IAD—has been lodged against him. Accordingly, the allegations in the amended complaint do not show that the provisions of the IAD have been activated in this case. As such, Plaintiff has failed to state a claim that Defendants' conduct violated the IAD or, as a result, Plaintiff's constitutional rights. The amended complaint must therefore be dismissed.[4] This dismissal, however, is without

---

[4] Because the non-activation of the IAD is dispositive in this case, the Court does not reach Defendants' arguments concerning Defendant Heath's personal involvement in the alleged wrongdoing, Defendants' qualified immunity, and Defendants' immunity under the Eleventh Amendment.

prejudice to Plaintiff's ability to bring a claim alleging that a true detainer has been lodged against him.

## V.     Conclusion

For the reasons stated above, Defendants' motion to dismiss the amended complaint is GRANTED, and the amended complaint is dismissed without prejudice.

It is hereby certified that any appeal taken *in forma pauperis* from this order would not be taken in good faith because such an appeal would be frivolous.  *See* 28 U.S.C. § 1915(a)(3).

The Clerk of Court is directed to close the motion at docket entry number 12 and to terminate this case.

SO ORDERED.

Dated:  New York, New York
        June 27, 2012

_____
J. PAUL OETKEN
United States District Judge